FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★   SEP 30 2015   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GARY A. KARNIK

                Plaintiff,

    -against-

CAROLYN W. COLVIN
Acting Commissioner, Social Security
Administration,

                Defendant.
----------------------------------------------------------X
FEUERSTEIN, J.

**ORDER**
13-CV-3475 (SJF)

Gary A. Karnik ("plaintiff" or "claimant") commenced this action under 42 U.S.C. § 405(g) seeking judicial review of the final determination of defendant Commissioner of Social Security Administration (Commissioner) denying plaintiff's application for disability benefits. Now before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants the Commissioner's motion and denies plaintiff's motion.

I. **BACKGROUND**

    A.    Administrative Proceedings

On July 12, 2010, plaintiff applied for disability benefits, asserting that he became disabled on January 8, 2010 (onset date) due to a torn rotator cuff and carpal tunnel syndrome. [Docket Entry No. 13] (Administrative Transcript. (Tr.) 123, 126). The Social Security Administration denied plaintiff's application. Tr. 48–51. Plaintiff appealed, and appeared with counsel before Administrative Law Judge (ALJ) Jay L. Cohen at a September 13, 2011 hearing. *Id.* at 30–46. By decision dated December 6, 2011, the ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 19–29. The Appeals Council denied

plaintiff's request for review. *Id.* at 1–6. Plaintiff appealed to this Court on June 19, 2013. [Docket Entry No. 1].

B.   Testimonial Evidence

Plaintiff, born May 6, 1952, has a two (2)-year degree in communications. Tr. 35, 126. He worked for Verizon for roughly twenty-nine (29) years until the January 8, 2010 onset date, primarily as a cable maintenance splicer. *Id.* at 36. This job required him to repair damaged cables and maintain cables in manholes, on aerial cables, or on poles. *Id.*

For roughly the last two (2) years of his employment, Verizon placed him on light duty installing its FiOS service in private residences and businesses. *Id.* As part of this light duty, plaintiff made line connections to telephone poles, and installed business and residential cable service. *Id.* He explained that on light duty, another employee would climb the poles, while he installed the cable box inside the residence or business. *Id.* at 42.

Plaintiff testified that he was unable to work because of pain in his right shoulder. *Id.* at 37. Due to this pain, he could not lift more than ten (10) or fifteen (15) pounds. *Id.* He further asserted that the pain prevented him from driving long distances because his right arm became sore, and because he did not "feel comfortable" driving with his left arm. *Id.* at 37, 40. This shoulder injury did not affect plaintiff's ability to walk or sit. *Id.* at 37.

Plaintiff underwent surgery for his right shoulder in January 2010. *Id.* The surgery relieved some of his pain, but he still suffered "moderate" pain. *Id.* at 37–38. The surgery did not restore his ability to carry heavy items, such as ladders and tools, tasks required of a cable maintenance splicer. *Id.* at 38. Plaintiff's left shoulder was also injured, but he did not wish to undergo surgery for that injury. *Id.*

2

Plaintiff also testified that he suffered from carpal tunnel syndrome in his right hand, which was the hand he used predominantly. *Id.* at 38–39. He received cortisone injections, which relieved the symptoms temporarily. *Id.* at 39. As a result of his carpal tunnel syndrome, he could not, for example, open jars. *Id.* at 40. He further stated that his injuries prevent him from turning screwdrivers, using pliers to turn or cut wire, or using a crimping tool, which were part of his light duty at Verizon. *Id.* at 42.

In his spare time, plaintiff watched television, did housework, mowed the lawn on his lawn tractor, cooked, and shopped with his wife. *Id.* at 40. His injury prevented him from playing softball. *Id.* at 41.

The ALJ also heard the testimony of Christina Boardman, a vocational expert. *Id.* at 43. She testified that plaintiff was fifty-seven (57) years old at the time of the hearing, and had past relevant work experience as a "cable placer, telephone repair" corresponding to Dictionary of Occupational Titles (DOT) code 822.281-022, SVP-7, which was a medium exertional job. *Id.* at 44. His light duty work corresponded to DOT code 822.281-018, SVP-7, which was a light exertional job. *Id.* at 44. He had no transferable skills. *Id.*

C. Medical Evidence

The record discloses that on January 5, 2010, plaintiff saw Dr. Michael Sileo, M.D. at Orthopedic Associates of Long Island, LLP regarding an injury to his right shoulder that had occurred at work on January 7, 2009. Tr. 206. At the time of his visit to Dr. Sileo, plaintiff was working light duty. *Id.* Dr. Sileo observed that plaintiff's biceps tendon and supraspinatous tendon were tender and painful when elevated and during lifting. *Id.* at 207. He recommended that plaintiff undergo right shoulder arthroscopy and subacromial decompression. *Id.*

3

Dr. Sileo performed the arthroscopic surgery on January 12, 2010. *Id.* at 173–76. He repaired plaintiff's right rotator cuff, a tear in his superior labrum (SLAP), and performed the subacromial decompression. *Id.* at 174.

Plaintiff returned for a postoperative visit on January 19, 2010, and reported that he felt "fine." *Id.* at 212. He was not taking pain medications. *Id.* Range-of-motion testing showed forward elevation to seventy (70) degrees, active abduction to sixty (60) degrees, active external rotation to twenty (20) degrees at zero (0) degrees abduction, and active internal rotation to the abdomen. *Id.* at 213. Dr. Sileo further noted tenderness in plaintiff's acromioclavicular joint and supraspinatous tendon, but none in his elbow and wrist. *Id.* He prescribed six (6) weeks of physical therapy. *Id.*

By June 21, 2010, plaintiff reported minimal acromioclavicular joint tenderness, an improvement since his surgery. *Id.* at 218. He had mild scapular asymmetry on forward elevation, which was also an improvement since his surgery. *Id.* He had 4+/5 infraspinatous strength in his shoulder, 4/5 strength in his external rotator, 4+/5 deltoid strength, and 5/5 internal rotator strength. *Id.* Range-of-motion tests of his right shoulder revealed active forward elevation to one hundred seventy (170) degrees, abduction to ninety (90) degrees, external rotation to forty (40) degrees at zero (0) degrees abduction, and active internal rotation to twelve (12). *Id.* He had full, pain-free use of his left shoulder. *Id.*

Dr. Sileo opined that plaintiff "improved quite nicely after his rotator cuff repair," though he felt that he could benefit from physical therapy. *Id.* He "would have held him out of work until he felt that he was able to go back to full duty," though this was "a nonissue as he is now

retired." *Id.* Plaintiff told Dr. Sileo that his right shoulder felt "pretty good," and that he was "throwing a ball around the yard the other day." *Id.* at 217.

Dr. Sileo saw plaintiff again on October 25, 2010, for a follow-up visit. *Id.* at 187. Plaintiff told Dr. Sileo that his shoulder felt "pretty good," though it ached when he rested on his right side. *Id.* He felt that physical therapy had helped to improve his range-of-motion, and to recover his strength. *Id.*

The Division of Disability Determination referred plaintiff to Dr. Erlinda Austria, M.D. for an orthopedic examination, which took place on November 29, 2010. *Id.* at 189. She listed his medical complaints as his torn right rotator cuff, a 1989 injury to his right knee and ligament, and a 1989 diagnosis of carpal tunnel syndrome in his right hand. *Id.*

Dr. Austria stated in her examination report that he suffered a limited range-of-motion in his shoulder. *Id.* "On a good day, the pain level is 3 to 4 over 10." *Id.* He cannot lift more than ten (10) pounds. Id. at 189. And although he can use a zipper or button a shirt, he could not open a jar. *Id.* He can stand or sit without difficulty. *Id.* She noted that his grip strength was five out of five 5/5 bilaterally, and that his hand and finger dexterity were intact. *Id.* at 190. She described forward elevation of the shoulders of one hundred (100) degrees on the right, one hundred thirty (130) degrees on the left, abduction of one hundred (100) degrees on the right, one hundred thirty (130) degrees on the left, adduction of thirty (30) degrees bilaterally, interior rotation of thirty (30) degrees on the right, and forty (40) degrees on the right, and exterior rotation of sixty (60) degrees on the right and ninety (90) degrees on the left. *Id.* at 191. His elbow flexion/extension was one hundred (100) degrees on the right and one hundred fifty (150) degrees on the left, and pronation and supination was eighty (80) degrees bilaterally. *Id.*

Dr. Austria noted no restrictions to plaintiff's head or neck, or extremities and "mild" restrictions with limited range-of-motion to activities of the right shoulder. *Id.* at 192. She found no restrictions to his ability to sit, stand, or walk for prolonged periods, and no restrictions to he ability to squat or bend. *Id.*

The record also contains a residual functional capacity (RFC) assessment by M. Fox, dated December 23, 2010, which indicates that plaintiff could "occasionally" lift objects weighing fifty (50) pounds, "frequently" lift objects weighing twenty-five (25) pounds, stand, walk, or sit for six (6) hours in an eight (8)-hour workday, and push or pull hand or foot controls with no limitations. *Id.* at 196. This RFC found plaintiff's claims of disability due to carpal tunnel syndrome and torn right shoulder "partially credible." *Id.* at 195–98.

Plaintiff saw Dr. Sileo on March 15, 2011. *Id.* at 214. Plaintiff rated his discomfort as "mild" during this visit. *Id.* Dr. Sileo wrote:

> I do feel he has reached maximum medical benefit during [sic] based on New York State workers compensation guidelines, as scheduled loss of use for the right shoulder would be 15% for his rotator cuff tear, 10% for his mild deficit in abduction, and 10% for his mild loss of internal and external rotation. This makes for a total scheduled loss of use of 36%

*Id.* at 215. He cleared plaintiff for light duty work. *Id.* at 216.

The record also contains a medical assessment form completed by Dr. Judy Emmanuele after the September 13, 2011 hearing which indicated that: plaintiff scored three out of five (3/5) on his ability to make a fist, to manipulate machinery such as a keyboard or a typewriter, and to manipulate small tools such as a pen or screwdriver, and ability to grasp; plaintiff scored two out of five (2/5) on his ability to carry and do repetitive tasks. *Id.* at 219–20.

D.  ALJ Decision

By decision dated December 6, 2011, the ALJ denied plaintiff's claim for benefits finding that he was not disabled within the meaning of the Social Security Act after applying the five (5)-step analysis set forth in 20 C.F.R. § 404.1520. Tr. 19–29. He found that plaintiff met the insured status requirements through December 31, 2014; that he had not engaged in substantial gainful activity since the onset date, 20 C.F.R. § 404.1571; and that he had severe impairments within the meaning of 20 C.F.R. § 404.1520(c), specifically: a surgically repaired right rotator cuff, SLAP tear, and subacromial impingement. Tr. 24.

The ALJ further found that none of plaintiff's severe impairments met or exceeded one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Specifically, the ALJ determined based upon the findings of Dr. Austria that plaintiff did not have the symptoms set forth in Listing 1.02, which governs major dysfunctions of a joint due to any cause. *Id.* at 25.

Instead, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). *Id.* at 25. In making this finding, the ALJ decision noted that plaintiff had recently undergone successful arthroscopic surgery for a SLAP and rotator cuff tear, and subacromial impingement, which had reduced his pain to moderate levels. *Id.* at 26. And, according to plaintiff's testimony, he was capable of carrying items up to fifteen pounds, he admitted that his arm felt "pretty good" after the surgery, and was even able to throw a ball. *Id.* The ALJ decision placed great weight on Dr. Sileo's March 2011 report, in which he stated that plaintiff's right shoulder had improved since the surgery due, in part, to physical therapy, and he was able to return to light duty with a 35% impairment. *Id.* at 27.

7

Furthermore, the ALJ credited the opinion of Dr. Austria that plaintiff had only mild range-of-motion restrictions in his right shoulder. *Id.* He also reasoned that plaintiff's condition had improved due to physical therapy since Dr. Austria's examination. *Id.* The ALJ found insufficient evidence in the record to suggest that plaintiff's carpal tunnel syndrome affected his ability to work because the evidence showed that he continued to work long after his diagnosis. *Id.* The ALJ accorded no weight to the RFC dated December 23, 2010. *Id.* at 28.

> In sum, the above residual functional capacity assessment is supported by the findings and conclusions discussed herein. The undersigned found that claimant's testimony was generally credible. He testified that he had no restrictions to [sic] sitting, standing, and walking, and that he could lift from ten (10) to fifteen (15) pounds, which would qualify within the exertional demands of work at a light level. In addition, the claimant's treating physician indicated that the claimant could return to light duty with no other restrictions indicated. Considering all these in sum, as well as the activities that the claimant reported during the hearing, such as mowing the lawn and shopping, and considering the fact that the claimant had not returned to work because he accepted a retirement package, tends to show that the claimant is less limited than alleged and that he retains the abilities to engage in a gainful activity at a light level of exertion.

*Id.* Finally, the ALJ credited the testimony of the vocational expert, and found that he could work as a light duty line installer, DOT 822.281-018, the job at which he had been working before he accepted the retirement package. *Id.* Accordingly, he found that plaintiff was not disabled. *Id.*

## II. DISCUSSION

Plaintiff raises two arguments in support of his motion for judgment on the pleadings. First, he argues that the ALJ erred by classifying his light duty work at Verizon doing FiOS installation as past relevant work under 20 C.F.R. § 404.1565(a). Plaintiff's Brief (Pl.'s Br.) 12–14. Second, he argues that the ALJ erred by failing to call a medical expert to testify whether his

symptoms were consistent with his underlying condition. Pl.'s Br. 14–15. The Commissioner counters that this Court should affirm the ALJ's December 6, 2011 decision denying plaintiff disability benefits because it is supported by substantial evidence. Defendant's Brief (Def.'s Br.) 10–15.

A. Standards of Review

1. Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applied to a Rule 12(c) motion is the same as that applied to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Id.* at 679. The court is limited "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

2. Review of Determinations by the Commissioner of Social Security

Upon review of the final decision of the Commissioner, a court may enter "judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A district court must consider whether "there is substantial

evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted). "In determining whether the [Commissioner's] findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal quotation marks and citation omitted).

Although the Commissioner's findings of fact are binding as long as they are supported by substantial evidence, this deferential standard of review is inapplicable to the Commissioner's conclusions of law or application of legal standards. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984). Rather, courts have a statutory and constitutional duty to ensure that the Commissioner has applied the correct legal standards, regardless of whether the Commissioner's decision is supported by substantial evidence. *See Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004). If a court finds that the Commissioner has failed to apply the correct legal standards, the court must determine if the "error of law *might* have affected the disposition of the case." *Id.* at 189 (emphasis added). If so, the Commissioner's decision must be reversed. *Id.*; *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the application of the correct legal standard could lead only to the same conclusion, the error is considered harmless and remand is unnecessary. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

B.  Evaluation of Disability

1.  Standard for Determining Disability

Under 42 U.S.C. § 423(d)(1)(A), the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The regulations promulgated under the Social Security Act require the Commissioner to apply a five (5) step sequential analysis to determine whether an individual is disabled under Title II of the Social Security Act. 20 C.F.R. § 404.1520; *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). The first step of the sequential analysis requires the Commissioner to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) and (b). "Substantial work activity" "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" "is

11

the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972(b). If a claimant is doing "substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) and (b). If the claimant is not engaged in any "substantial gainful activity," the Commissioner proceeds to the second step.

The second step requires the Commissioner to consider the medical severity of the claimant's impairment to determine whether he or she has a "severe medically determinable physical or mental impairment that meets the duration requirement in C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment, or combination of impairments, is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the duration requirement, the claimant's impairment must either be "expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The Commissioner will proceed to the next step only if the claimant's impairment is medically severe and meets the duration requirement.

At the third step, the Commissioner considers whether the claimant has a medically severe impairment that "meets or equals one of [the] listings in appendix 1 to subpart P of [20 C.F.R. Part 404 of the Social Security Act] and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets or equals any of the listings and meets the duration requirement, the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant is not found to be disabled at the third step, the Commissioner must "assess and make a finding about [the claimant's] residual functional

capacity [("RFC")] based on all the relevant medical and other evidence."

20 C.F.R. § 404.1520(e). The RFC considers whether "[the claimant's] impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). The RFC is "the most [the claimant] can still do despite [his or her] limitations." *Id.*

At the fourth step, the Commissioner compares the RFC assessment "with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv) and (f). If the claimant can still do his or her past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot do his or her past relevant work, the Commissioner proceeds to the fifth and final step of the sequential analysis.

At the fifth step, the Commissioner considers the RFC assessment "and [the claimant's] age, education and work experience to see if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can adjust to other work, the claimant is not disabled. *Id.* If the claimant cannot adjust to other work, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proving first four (4) steps of the sequential analysis, while the Commissioner bears the burden at the last step. *See Talavera*, 697 F.3d at 151.

C. Application of the Five-Step Sequential Analysis

The ALJ found at step one (1) that plaintiff has not engaged in substantial gainful activity since the onset date; at step two (2) that plaintiff's torn rotator cuff, SLAP tear, and carpal tunnel syndrome constituted severe impairments; and at step three that none of these severe impairments met or exceeded the impairments listed in Appendix 1 of 20 C.F.R. Part 404,

Subpart P. *Id.* at 24–25. He further found that plaintiff retained the RFC to perform light work, defined in 20 C.F.R. § 404.1567(b) as work that requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

The ALJ's findings at steps one (1) through three (3) are substantiated in the record, which discloses that plaintiff suffered a rotator cuff tear, a SLAP tear, and a subacromial impingement for which Dr. Sileo performed arthroscopic surgery. *Id.* at 173–76. The surgery succeeded in repairing these injuries, and plaintiff reported by March 2011 that his right shoulder felt "pretty good" as a result of the surgery and physical therapy, and that he was able to return to activities such as throwing a ball, which he was unable to do before his injury. *Id.* at 217, 41. The record also suggests that although plaintiff had suffered from carpal tunnel syndrome since 1989, he had worked in spite of this condition until the onset date. *Id.* at 189. Plaintiff further testified that he was capable of lifting fifteen (15) pounds. *Id.* at 37. In sum, substantial evidence supports the ALJ's conclusion that plaintiff retained the RFC to perform light duty work.

The parties dispute the ALJ's conclusion at step four (4) that plaintiff could perform his past relevant work, which was light duty work for Verizon installing its FiOS service, which corresponded to DOT code 822.281-018. Specifically, plaintiff contends that the ALJ erred by classifying his light duty work as "past relevant work." Instead, he urges, the ALJ should have found that it was work done under "special conditions." 20 C.F.R. § 404.1573(c) provides that a claimant's previous work done under "special conditions" may not constitute "substantial gainful activity," and thus not evidence of a claimant's ability to work if, for example: (1) the claimant "required and received special assistance from other employees in performing [his] work"; or (2)

the claimant was "provided with special equipment or were assigned work especially suited to [his] impairment." He points to his testimony that he worked on the ground while another employee climbed the telephone pole, and that Verizon accommodated his impairment by assigning him light duty work. Pl.'s Br. 14–15 (citing *Novak v. Barnhart*, 180 F. Supp. 2d 990, 994 (E.D. Wis. 2001) (noting that ALJ did not make findings as to whether mentally handicapped claimant, who worked sporadically affixing stickers to campaign buttons for roughly half minimum wage, and who depended on sister to drive him to work performed "substantial gainful activity" under 20 C.F.R. § 404.1573(c)); Tr. 36, 42.

The ALJ's conclusion at step four (4), that plaintiff could perform past relevant work enjoyed substantial evidential support and was legally correct. The regulations define "past relevant work" under step four (4) broadly as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). They further provide that the ALJ "may use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' . . . to obtain evidence" necessary to determine if a claimant can perform his or her past relevant work given their RFC. 20 C.F.R. § 404.1560(b)(1). As stated above, the record supports the ALJ's finding that plaintiff could perform light work. And, the testimony of the vocational expert established plaintiff's past relevant work fell under DOT code 822.281-018, which constituted light exertional work. Tr. 43–44. By syllogism, the ALJ properly concluded that plaintiff could perform his past relevant work.

The record discloses that plaintiff installed FiOS cable boxes for the two years immediately preceding the onset date as part of his employment with Verizon. Tr. 36. His

earnings during those years did not differ substantially from his pre-injury earnings. *See id.* at 115; *see also* 20 C.F.R. § 404.1574(a)(1) ("Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity."). The Court finds that the ALJ fairly inferred from this testimony and record evidence that plaintiff worked his light duty job "long enough . . to learn to do it" and that it constituted substantial gainful employment. *See, e.g., Stupakevich v. Chater*, 907 F. Supp. 632, 638 (E.D.N.Y. 1995) (noting that substantial evidence also includes reasonable inferences) (citation omitted).

Likewise, the Court rejects plaintiff's argument that the ALJ erred by failing to call a medical expert to resolve what he characterizes as an "ambiguity" in the evidence. Pl.s' Br. 15. "Specifically, the ALJ stated the claimant's testimony showed that he was able to perform light work when his testimony actually displayed that he was not even capable of less that sedentary work." *Id.* Accordingly, he argues, the ALJ should have called a medical expert to testify regarding plaintiff's RFC. *Id.*

This argument lacks both a legal and factual basis. It was the ALJ's role to assess plaintiff's credibility regarding the severity of his symptoms in light of the medical evidence in the record, which he did. *E.g., Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("It is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms.") (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983)); *see* 20 C.F.R. § 404.1527(e)(2). The record medical evidence, including the opinion of plaintiff's treating physician, Dr. Sileo, unambiguously showed that plaintiff retained the RFC

to perform light duty work. Accordingly, the Court finds that the ALJ was not required to call a medical expert under the circumstances here.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and plaintiff's cross-motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied.

**SO ORDERED.**

s/ Sandra J. Feuerstein<br>Sandra J. Feuerstein<br>United States District Judge

Dated: September 30, 2015
      Central Islip, New York